UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

STEVEN ANDERSON,

                        Petitioner,

       v.

WARDEN CARLIN,

                    Respondent.

Case No. 1:02-cv-00204-LMB

**MEMORANDUM DECISION AND ORDER**

Pending before the Court in this habeas corpus action are various motions filed by the parties that are ripe for adjudication, including Respondent Warden Terema Carlin's Amended Motion for Partial Summary Judgment. (Dkt. 38-2.) All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 36.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having reviewed the record and considered the arguments of the parties, the Court finds that oral argument is unnecessary, and enters the following Order.

## BACKGROUND

Petitioner challenges his conviction for aggravated battery in the Fifth Judicial District Court in Twin Falls County, Idaho. The events giving rise to his conviction are as follows. On August 4, 1998, Petitioner was charged with striking his girlfriend, C.B.,

repeatedly in the face, based on allegations that the repeated blows broke her jaw. "Great

bodily harm" is a required element of felony aggravated assault, distinguishing it from

misdemeanor assault. (State's Lodging A-1, p. 5.) The charges were based, in part, on

Detective Lewin's investigative report of July 28, 1998, containing the following

summary of the victim's and witnesses' statements:

> C.B. said that she was getting in a car to leave when Steven
> Anderson reached in through the open car window and grabbed C.B.'s
> glasses from her face. C.B. stated that she cannot see without her glasses.
> C.B. said that she got out of the car and ran after Anderson. C.B. said that
> she was physically struggling with Anderson to get her glasses back. C.B.
> said that Anderson hit her repeatedly and would not return her glasses. Dan
> Winkler [C.B.'s ex-husband] stated that he had witnessed this event.

> C.B. said that he went into the residence and sat in a chair in the
> kitchen. C.B. then said someone came into the kitchen and struck her across
> the face. C.B. said that she could not see who it was that hit her because she
> didn't have her glasses on. Dan Winkler stated that Anderson was the one
> who had hit C.B in the kitchen. Winkler said Brenda Owens and Pam Olson
> also witnesses this event.

> Owens admitted to seeing the incident outside but was not in the
> kitchen when C.B. was hit. Pam Olson said that he witnessed Steven
> Anderson walk into the kitchen and hit [C.B.] with great force across the
> face, knocking [C.B.] out of the chair onto the floor. Olson said that
> Anderson had hit [C.B.] with an open hand. On August 28, 1998, the
> prosecution amended the criminal complaint to allege that Petitioner broke
> C.B.'s jaw by striking her in the face with an open hand.

(State's Lodging C-1, p. 109.)

Petitioner argues that the actual videotape of Detective Lewin's interview of C.B.

and Winkler contained several different statements, when compared to the written report.

In the videotape, C.B. said Petitioner hit her in the face when she was trying to get her

glasses back, and Winkler said he honestly did not think that Petitioner broke her jaw at that point. Winkler also reported, that, after C.B. was struck and fell on the floor, either Ms. Olsen or Ms. Owens "hollered, 'He hit her right at the table.'" Winkler said he thought this was the point when Petitioner broke C.B.'s jaw. In the videotape, C.B. said that she did not remember Petitioner hitting her in the house. (Dkt. 22, pp. 16-17.)

C.B., Brenda Owens, and Danny Winkler testified at trial. Petitioner, Pam Olsen, and Detective Lewis did not testify. The videotape and written interviews were not admitted into evidence.[1] In Petitioner's direct appeal briefing, presented through counsel, Petitioner explained the strength of the State's case regarding whether Mr. Anderson struck C.B.:

> First, C.B. testified that Mr. Anderson was yelling at her in the kitchen. She was sitting at the kitchen table and Pam Olsen, the only other person in the kitchen, was standing over by the refrigerator. C.B. then saw someone lean over the table and the "next thing she knew" was that she was screaming because her face hurt.

> Additionally, Danny Winkler and Brenda Owens testified that they saw C.B. and Mr. Anderson in a verbal argument outside the house. They stayed outside when C.B. and Mr. Anderson went into the kitchen. They then heard C.B. yelling in pain and immediately went into the kitchen. There they saw C.B. on the floor, crying and holding her face in obvious pain. When they entered the kitchen, they heard C.B. cry out: "He hit me." As Mr. Winkler and Mr. Anderson were the only men present, C.B. was obviously referring to Mr. Anderson.

---

[1] (See State's Lodging B-7 (state district court's ruling on C.B.'s prior statements to police).)

**MEMORANDUM DECISION AND ORDER - 3**

Finally, Mr. Anderson was not in the kitchen when they arrived, but Ms. Owen and Mr. Winkler saw Ms. Olsen still standing by the refrigerator. The three of them, Mr. Winkler, Ms. Owen, and Ms. Olsen, helped C.B. get up off the floor. It was impossible to argue that Ms. Owen was the one who hit C.B. as defense counsel acknowledged on the record. Therefore, it must have been Mr. Anderson as he was the only other person in the kitchen.

In light of that evidence it was not possible to argue that Mr. Anderson did not strike C.B.

(State's Lodging D-3, pp. 12-13.)

Dr. Mark Allen Plant, C.B.'s treating physician, testified at trial for the prosecution. He opined that C.B. was hit with a fist or an object, because an open-handed slap could not have caused the injuries. (State's Lodging A-2, pp. 17-62.) While the investigator's written statement reported that Ms. Olsen stated both that Petitioner hit C.B. with great force (knocking C.B. from the chair onto the floor) *and* that he hit her with an open hand, Dr. Plant's opinion on the type and amount of force it would take to break a person's jaw suggests that both of the descriptions offered by Ms. Olsen could not be true. Ms. Olsen did not respond to her subpoena and the trial court would not continue the trial to permit the prosecutor to locate and compel her to come to trial, and thus the jury did not hear her testimony.

C.B. testified that she had first reported to Dr. Plant that she broke her jaw when she wrecked her bicycle into Winkler's porch. However, she reported the crime two weeks later when she also reported that Petitioner raped her, at which time she said that Petitioner had hit her and broken her jaw two weeks earlier. (State's Lodging A-2, pp. 202-12.) The prosecution argued at trial that Petitioner must have hit C.B. with a closed

fist because of the severity of the injury. Based on the evidence presented at trial, the jury

convicted Petitioner of felony aggravated battery, rather than the lesser-included offense

of misdemeanor battery.

On direct appeal, the Idaho Court of Appeals concluded: "The evidence of

Anderson's guilt was overwhelming and was not based merely upon C.B.'s [the victim's]

testimony." (State's Lodging B-7, p. 5.) In upholding the sentence of seven years fixed

with eight years indeterminate, the Court of Appeals observed:

> The evidence showed that Anderson struck a defenseless woman in the face
> with enough force to fracture her jaw. In fact, his victim was unable to
> defend herself or even attempt to avoid the blow because Anderson had
> taken her glasses, rendering her nearly blind.

(State's Lodging B-7, p. 6.)

On post-conviction review, the Idaho Court of Appeals concluded, in the context

of Petitioner's ineffective assistance of counsel claim:

> Even if counsel had presented evidence that Anderson had slapped
> but not punched C.B., had shown that C.B. had fallen from a bicycle, had
> refrained from referencing a defense that could not be supported, and had
> demonstrated that witnesses may have had some motive to lie, it is highly
> unlikely that the jury would have concluded that Anderson did not cause
> C.B.'s injury. In our view, any reasonable jury would have concluded that
> Anderson inflicted C.B.'s injuries because there was no question that he hit
> her in the face, that shortly thereafter it was discovered that she had a
> broken jaw where he had struck her, and that the injury was not consistent
> with an accidental fall but was consistent with a penetrating blow.
>
> Further, calling Pam Olsen as a witness likely would have been more
> helpful to the prosecution than the defense. She was the only witness who
> could confirm C.B.'s testimony that she was struck in the kitchen by
> Anderson. There is no reason to believe that the jury would have doubted
> that Anderson inflicted the blow that broke C.B.'s jaw upon hearing Pam

> Olsen's testimony. Given all of the other evidence of his guilt, the jury more likely would have concluded that Olsen was mistaken or deceitful in her report that Anderson used an open hand.

(State's Lodging D-15, pp. 6-7.)

Petitioner filed his federal Petition for Writ of Habeas Corpus in the instant action on May 3, 2002, before Petitioner's first post-conviction proceeding was completed. (Dkt. 4.) This case was stayed pending Petitioner's attempts to exhaust some of his claims through his first and successive post-conviction actions in state court. (Dkt. 14.) In his successive post-conviction action, Petitioner was appointed counsel, who disagreed with the claims Petitioner wished to present. That attorney sought to withdraw on Rule 11 grounds. Permission to withdraw was granted, and a second attorney was appointed. That attorney also was permitted to withdraw, and the state district court refused to appoint a third attorney, ruling that "'the petition as stated is frivolous, [and] does not warrant appointment of additional counsel.'" (State's Lodging F-4, p. 2.)

The claims in the successive post-conviction petition were dismissed as untimely. On May 30, 2012, nearly six years after the filing of the successive petition, the Idaho Court of Appeals affirmed the dismissal of the petition on untimeliness grounds, and alternatively explained the reasons advanced by Petitioner were meritless. (State's Lodging F-4.)

On April 5, 2013, this federal habeas corpus case was re-opened (Dkt. 23), based on Petitioner's Amended Petition, filed on March 18, 2013. (Dkt. 22.) Respondent argues that the following claims are procedurally defaulted and are subject to dismissal:

(1)     Claim Two, which is based on prosecutorial misconduct, particularly, that the prosecutor knew the victim, C.B., had told a detective that Petitioner *punched her outside near the car*, but the prosecutor instead elicited testimony from the victim that she was *slapped inside the house*. (Dkt. 22, p. 14.)

(2)     Claim Three, which is the ineffective assistance counterpart of Claim Two, that "trial counsel during the jury trial failed to perform fully and effectively the functions of trial counsel in that he did not bring to the attention of the court the wrongful actions of the state in presenting the incorrect testimony of C.B." (Dkt. 22, p. 15 (spelling and punctuation regularized).) Specifically, "the Prosecutor should have been constrained by knowledge of C.B.'s prior recorded statement, and [Petitioner] was harmed by her failure to do so." (Dkt. 22, p. 16.)

(3)     Claim Eight, which consists of the following prosecutorial misconduct allegations: (a) the prosecutor knowingly, willfully, intentionally, and fraudulently misrepresented facts to produce a wrongful conviction; (b) the doctor testified that a slap to the face could not have caused C.B.'s injuries, but the prosecutor elected to falsify material facts to obtain a conviction and misled the jury to secure a conviction; (c) in closing argument, the prosecutor told the jury that they must find petitioner guilty of punching C.B. in the jaw with his closed fist; (d) the prosecutor's statements were not consistent with the facts of the case as reported to the police by the eyewitnesses; (e) Pam Olsen was the only eyewitness who could testify correctly that C.B. was slapped across the face by Petitioner, but she did not appear for the trial, and even though the prosecution sought a continuance to produce Olson, the trial court refused to allow a continuance; (f) the prosecution moved the court to preclude Detective Lewin from being called as a witness, who could have testified that Olsen told him that Petitioner only slapped C.B., and that the slapping occurred in the kitchen; (g) the prosecutor "suppressed this evidence" to mislead the jury into believing Petitioner hit C.B. with a closed fist, because no one at trial testified that Petitioner had hit C.B. with a closed fist, and no documentary evidence was admitted to show that. (Dkt. 22-1, pp. 12-20.)

(4)     Claim Nine, which is that the prosecutorial misconduct occurred when the prosecution called Dan Winkler as a witness to testify that Petitioner had repeatedly hit C.B. outside, when the prosecutor knew these statements to be untrue, particularly because the other witness, Brenda Owens, testified

that Petitioner never hit C.B. outside her residence. Petitioner argues that police reports show otherwise. (Dkt. 22-1, pp. 19-21, Exhibits B and J.)

## PRELIMINARY MOTIONS

1. **Respondent's Motion for Leave to File Amended Motion for Partial Summary Dismissal (Dkt. 38)**

Respondent filed a Motion for Partial Summary Dismissal (Dkt. 32), but later filed a Motion for Leave to File an Amended Motion for Partial Summary Dismissal (Dkt. 38), because counsel for Respondent had inadvertently failed to include analysis of the successive post-conviction action in its Motion for Summary Dismissal. Good cause appearing, the Motion for Leave to File an Amended Motion for Partial Summary Dismissal will be granted. The Court will now consider that Motion. (Dkt. 38-2.) Petitioner has filed a "Motion Opposing Respondent's Amended Partial Summary Judgment Motion," which is in essence Petitioner's response. (Dkt. 43.)

2. **Petitioner's Motion and Objection to Lodging of State Court Records and Motion to Compel Supplemental Lodging (Dkt. 35)**

Petitioner objects to the fact that Respondent has filed only a portion of the entire state court record, which are those filings from the direct appeal and the first post-conviction appeal. Petitioner asserts that there was also a successive post-conviction appeal. After Petitioner filed his motion, Respondent's counsel realized the mistake, and has since lodged the additional records. (Dkt. 37.) Therefore, the issue is moot, and Petitioner's "Motion to Compel" Respondent to lodge the documents and to reimburse Petitioner for the cost of obtaining the records will be denied.

MEMORANDUM DECISION AND ORDER - 8

### 3. Petitioner's Motion for Judicial Notice (Dkt. 21)

Petitioner requests that the Court take judicial notice of several items that appear to be part of the state court record. It is appropriate for the Court to take judicial notice of court dockets from state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Accordingly, the motion will be granted, to the extent that it is appropriate under the law. *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011) (explaining general rule and exceptions for expansion of the record on habeas review).

## RESPONDENT'S MOTION FOR
## PARTIAL SUMMARY DISMISSAL (Dkt. 38-2)

Respondent asserts she is entitled to dismissal of Claims Two, Three, Eight, and Nine in the Amended Petition (Dkt. 22), on procedural default grounds. Petitioner contests dismissal, arguing that the state procedural bars relied upon by the Idaho Court of Appeals were not adequate and independent, and, therefore, cannot serve as procedural bars in this federal matter.

### 1. Standard of Law

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it as a federal claim to the highest state court

for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is premised. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

"[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). In *Baldwin*, the United States Supreme Court reasoned: "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id*. However, in some instances, appellants are allowed to incorporate by reference issues presented in an appendix but not argued in the appellate brief. *See Insyxiengmay v. Morgan*, 403 F.3d 657 (9th Cir. 2005); *accord, Scott v. Schriro*, 567 F.3d 573 (9th Cir. 2009).

Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim. 28 U.S.C. § 2254(b)(2).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now

available. *O'Sullivan*, 526 U.S. at 848. A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but the state court rejected the claim on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991). Under these circumstances, the claim is considered to have been "procedurally defaulted." *Coleman,* 501 U.S. at 731.

Claims that are not properly presented to the state district court and rejected by the state appellate courts on adequate and independent procedural grounds are deemed procedurally defaulted in this action. *Ford v. Georgia*, 498 U.S. 411, 422-24 (1991). *See Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). If the procedural bar rests on federal grounds or is intertwined with federal grounds, it is not an "independent" state ground, and a federal court may properly review the matter. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir.), *cert. denied*, 540 U.S. 938 (2003). "A state law ground is so interwoven if the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Id*. at 581 (internal citations and punctuation omitted).

To be an "adequate" state ground, the procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d at 1093-94 (quoting *Wells v. Maass*, 28 F.3d at 1010); *see also Lee v. Kemna*, 534 U.S. 362 (2002). The *Martinez* Court explained that when there is "an absence of prior authority supporting the [state court's] decision" and

the decision appears "contrary to [state] law," such a decision does *not* rest on a "clear,

consistently applied, and well-established" state procedural rule, and the procedural

default may *not* be applied to bar consideration of the merits of a petitioner's claim in a

federal habeas corpus action. *Id.*

A state procedural rule is not automatically "inadequate" under the adequate state

ground doctrine—and therefore unenforceable on federal habeas review—because the

state rule is discretionary rather than mandatory. *Beard v. Kindler*, 130 S.Ct. 612, 618

(2009); *Walker v. Martin*, 131 S.Ct. 1120, 1125 (2011). The *Walker* Court reiterated that

a "rule can be 'firmly established' and 'regularly followed' . . . even if the appropriate

exercise of discretion may permit consideration of a federal claim in some cases but not

others." 131 S.Ct. at 1128 (citing *Kindler*, 130 S.Ct. at 618). However, a "state ground, no

doubt, may be found inadequate when 'discretion has been exercised to impose novel and

unforeseeable requirements without fair or substantial support in prior state law,'" or, in

other words, "in a surprising or unfair manner." *Walker*, 131 S.Ct. at 1130 (citation

omitted).

## 2.      Discussion

Petitioner has attempted to bring his claims before the Idaho courts several times.

Respondent describes the procedural history of this case as "protracted and convoluted."

(Dkt. 38-3. p. 4.) After a review of the record in this matter, the Court has concluded that

several factors make resolving the procedural issues more difficult than resolving the

merits of these claims. The Court will briefly describe the complex procedural issues before setting forth additional instructions for the briefing of these claims on the merits.

Claims Two, Eight, and Nine, the prosecutorial misconduct claims, were presented in the post-conviction appellate review in a pro se supplemental brief (State's Lodging D-11), but the Idaho Court of Appeals determined that they were procedurally barred because they could have been raised on direct appeal, pursuant to Idaho Code § 19-4901(b). The Idaho Court of Appeals did not address the merits of the claims because of the improper presentation. (State's Lodging D-15, p. 4.) Petitioner included these claims in the petition for review. The Idaho Supreme Court denied the petition for review in the post-conviction matter without comment.

Petitioner argues that the Idaho Court of Appeals's refusal to hear these claims did not rest on an adequate state procedural rule, and, therefore, he argues the claims are not procedurally barred for federal habeas corpus purposes. Idaho law provides that, in determining whether a prosecutorial misconduct claim should have been brought on direct appeal or post-conviction review, a court should look not only to whether the factual basis of the claim was known at the time of the direct appeal (which means it should have been brought on direct appeal), but also to whether extra-record evidence is needed to support the claim (which means that it should have been brought on post-conviction review). *See State of Idaho v. Windsor*, 716 P.2d 1182 (Idaho 1985).

The factual grounds of the prosecutorial claims were known to Petitioner's *counsel* at trial, but Petitioner argues that he could not have brought the claim on direct appeal

because *Petitioner himself* did not know of the video and written interviews until well after trial. Petitioner further argues that, because the video and written interviews were not a part of the record, the claim *was* properly brought on post-conviction review where the court could review the omitted video and written interviews. Thus, he argues, the Idaho Court of Appeals incorrectly refused to hear the claim, rendering the default an inadequate procedural bar for federal habeas corpus review. On the other hand is the issue of whether Petitioner's direct appeal counsel should have raised the claim on direct appeal as fundamental error, even though the extra-record items would have been unavailable.

Complex procedural issues are also present in the analysis of Petitioner's successive post-conviction petition. Part of the complexity arises from the fact that, when Petitioner filed his successive petition in 2006, applicable Idaho law was less developed than at the time when the Idaho Court of Appeals decided his case in 2012. "Adequacy" for federal habeas corpus procedural bar purposes is measured at the time of the purported default–here, the date the successive petition was filed, not the date the court considered it.

The Idaho Court of Appeals gave Petitioner the benefit of the doubt regarding his assertion that he personally did not have knowledge of the content of the video and written statements at the time of trial in 1999, but that he discovered them in 2005. The Court of Appeals held that, even if the factual basis of the claim was not discovered until

2005, the successive post-conviction petition still was untimely, because it was not filed within a reasonable time.

On federal habeas corpus review, Petitioner argues that the procedural bar is not adequate, because (1) the state district court raised the statute of limitations issue sua sponte, an action not consistently applied in 2006;[2] (2) in a prior ruling, a reasonable time was deemed to be one year (about the same delay as in Petitioner's case);[3] and (3) a "successive" petition could not have been brought earlier, because his first post-

---

[2] Petitioner cites *Martinez v. Klauser*, 266 F.3d 1091 (9th Cir. 2001), *Edward Anderson v. State*, 992 P.2d 783 (Idaho Ct. App. 1999), and *Cole v. State*, 15 P.3d 820 (Idaho 2000), to support his position that sua sponte raising of the statute of limitations was not a regular practice of Idaho courts at the time he filed his petition. He also argues that Respondent's citation of a case decided *after* the date Petitioner's case was decided, *State v. Ochieng*, 213 P.3d 406 (Idaho Ct. App. 2009), affirming the practice of sua sponte dismissal on statute of limitations grounds, does not bear on whether the ground was adequate *at the time* of dismissal in Petitioner's successive petition, filed in 2006.

[3] In *State v. Hernandez*, 992 P.2d 789, 794 (Idaho Ct. App. 1999), the court stated: "We find that "the one-year limitation period contained in I.C. § 19-4902 [is] instructive as to what constitutes a reasonable time within which to file a successive post-conviction relief action. . . . Based on the foregoing, we conclude that one year is a reasonable time for an inmate in these circumstances to proceed with a successive post-conviction relief action if the initial action was dismissed due to ineffective assistance from the attorney representing the inmate in that proceeding." *Id.* at 799.

By 2007, one year *after* Petitioner filed his successive petition, the Idaho Supreme Court had clarified that, rather than using the one-year time period for original post-conviction petition filings as a measure of what is a "reasonable time" for successive post-conviction filings, it would simply consider the facts of each case "on a case-by-case basis, as has been done in capital cases," particularly taking into consideration the date that the petitioner became aware of the facts supporting the new claim. *State v. Charboneau*, 174 P.3d 870, 874-75 (Idaho 2007). In *Charboneau*, the Idaho Supreme Court determined that bringing a claim 13 months after Mr. Charboneau discovered the factual basis of that claim was an unreasonable delay. *Id.* at 875.

conviction petition was not finally decided until two months prior to the filing of the successive petition.[4]

Because the procedural issues are complex and may require additional briefing and evidentiary development on threshold (non-merits) issues, the Court finds that the most efficient way to address Petitioner's claims is to set aside the procedural issues and address the claims on the merits. The United States Supreme Court has determined that federal courts are not required to address a procedural default issue before denying a petition on the merits. *Lambrix v. Singletary*, 520 U.S. 518 (1997); *cf. Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face . . . clearly not meritorious despite an asserted procedural bar"); *cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The Court will provide Petitioner with an opportunity to argue that he should be granted relief under a de novo standard of review. The Court provides the applicable standards of law and its preliminary observations below.

---

[4] In *Schwartz v. State*, 177 P.3d 400 (Idaho Ct. App. 2008), the court stated: "[I]f an initial post-conviction action was timely filed and *has been concluded*, an inmate may file a subsequent application outside of the one-year limitation period if "the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application." *Id.* at 403 (citing to I.C. § 19-4908). In Petitioner's case, the Court of Appeals determined that Petitioner incorrectly interpreted this statement to mean that a petitioner cannot file a successive petition until the appeal from a prior post-conviction has been concluded, that the issue in *Schwartz* was amendment of the original petition only, and that the state appellate courts had never adopted such a rule. (State's Lodging E-2.)

**MEMORANDUM DECISION AND ORDER - 16**

## A.    *Prosecutorial Misconduct*

Under a de novo standard of review, a prosecutor's misconduct will require reversal of a state court conviction only where the comments or actions sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Inquiry into the fundamental fairness of a trial requires the court to examine the effect of any misconduct within the context of the entire proceedings. *DeChristoforo*. *Id*.

The Court gives notice to Petitioner that, on a preliminary review of the current record, it agrees with the Idaho Court of Appeals that none of the alleged acts of prosecutorial misconduct would have changed the outcome of the trial. This was a case of circumstantial evidence, where the evidence pointed to the conclusion that Petitioner caused the victim to suffer two traumatic events in the space of a short time: first, Petitioner engaged in a physical struggle with C.B., where he took her glasses from her, rendering her nearly blind; second, without warning to C.B., Petitioner struck her face with such force that it knocked her to the ground. That C.B. and some of the witnesses each were confused and potentially wrong about some of the details of the events is to be expected of human beings. The jury's job was to determine credibility and sort out the truth from *all* of the evidence to come to a conclusion of "who, what, when, and where." The great majority of the evidence points to the blow from Petitioner's hand in the kitchen, striking Petitioner's jaw with such force that it knocked her from the chair, as the act that supported the aggravated battery conviction.

## B.     *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the assistance of counsel under the Sixth Amendment, made applicable to the states by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335 (1963). In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established the proper test to be applied to claims alleging constitutionally inadequate representation. To succeed on such a claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and that (2) the petitioner was prejudiced thereby. *Id*. at 684. Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. The pertinent inquiry "is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998).

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

The Court gives notice to Petitioner that he should focus on the prejudice prong of the ineffective assistance of counsel claim. It is true that his counsel, Mr. Valdez, did not impeach the victim and witnesses with contradictory statements, did not require Ms. Olsen to come to trial (either by issuing a new subpoena for her presence or asking to have the prior subpoena enforced), and did not interview Dr. Plant or otherwise determine what his testimony would be. However, the record tends to reflect that the victim's testimony was mostly unhelpful in determining what happened because she could not see; that, while the open hand testimony would have benefitted Petitioner's case, Ms. Olsen would have been able to testify that Petitioner struck the victim with great force and that the victim was knocked out of her chair with the blow, which would have harmed his case; and that Mr. Valdez could have crafted a defense with a different slant in light of Dr. Plant's opinion–that if Petitioner struck the victim with an open hand, it was only misdemeanor battery, and that the victim likely broke her jaw riding her bike–but the strategy would not have been successful in light of the totality of the evidence presented at trial. None of the proposed evidence overcomes the fact that the vast majority of the evidence pointed to the kitchen scene as the event where C.B.'s jaw was broken, and it pointed to Petitioner as the perpetrator.

**3.     Conclusion**

Because determining the claims on the merits is the most judicially efficient way to address the claims at issue in Respondent's Motion for Partial Summary Dismissal, the Court will deny the motion without prejudice and proceed to the merits. Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to dismiss claims summarily where it plainly appears that they have no merit, and the Court has considering doing so here. However, because other claims in the Petition are properly exhausted and are proceeding to a merits review, the Court will give the parties an opportunity for further briefing before making a final decision on these claims. The Court's preliminary observations in this Order are subject to change based upon the parties' briefing of the claims on the merits.

**ORDER**

**IT IS ORDERED:**

1.     Petitioner's Request for Judicial Notice (Dkt. 21) is GRANTED to the extent set forth above.

2.     Petitioner's Motion or Objection to Respondent's Notice of Lodging of State Court Records (Dkt. 35) is DENIED as MOOT.

3.     Petitioner's Motion to Compel Respondents to Comply with Court Order (Dkt. 35) is DENIED.

4.     Respondent's Motion for Leave to File Amended Motion for Partial Summary Dismissal and Supporting Brief (Dkt. 38) is GRANTED.

5.     Respondent's Motion for Partial Summary Dismissal (Dkt. 32) is MOOT as it is withdrawn and replaced by Respondent's Amended Motion for Partial Summary Dismissal (Dkt. 38-2).

6.     Petitioner's Motions for Extension of Time to file Response to Motion for Partial Summary Dismissal (Dkts. 40, 42) are GRANTED. The response (filed at Dkt. 43) is considered timely filed.

7.     Petitioner's Motion Opposing Respondent's Amended Partial Summary Dismissal Motion (Dkt. 43) is MOOT to the extent it was improperly filed as a motion; it has been considered as a response.

8.     Respondent's Amended Motion for Partial Summary Dismissal (Dkt. 38-2) is DENIED without prejudice, pending adjudication of the claims on the merits.

9.     Respondent shall file an answer to the Amended Petition **within 90 days** after entry of this Order, addressing all of Petitioner's claims. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the remaining claim. Petitioner shall file a reply (formerly called a traverse), rebutting Respondent's answer and brief, which shall be filed and served **within 30 days** after service of the answer. Respondent has the option of filing a sur-reply **within 14 days** after service of the reply. At that point, the case shall be deemed ready for a final decision.

**MEMORANDUM DECISION AND ORDER - 21**

10.     No party shall file supplemental responses, replies, affidavits or other

        documents not expressly authorized by the Local Rules without first

        obtaining leave of Court.

11.     No discovery shall be undertaken in this matter unless a party obtains prior

        leave of Court, pursuant to Rule 6 of the Rules Governing Section 2254

        Cases.

DATED:  **March 31, 2014**.



Honorable Larry M. Boyle
United States Magistrate Judge